

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP JACKSON,

    Plaintiff,

v.

INTEL CORPORATION,
a Delaware Corporation,

    Defendant.

No. 09 C 2178

The Honorable William J. Hibbler

## MEMORANDUM OPINION AND ORDER

Plaintiff Philip Jackson brought this lawsuit against Intel Corporation, setting forth a claim of patent infringement of United States Patent No. 4,596,900 (the "'900 Patent"), a patent for a "Phone-Line-Linked, Tone Operated Control Device." Intel moves the Court to dismiss the case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Intel's motion raises only the issue of whether Jackson complied with the federal marking statute, 35 U.S.C. § 287. Intel argues that Jackson is required to plead compliance with § 287, and failed to do so, and that for this reason alone his claim should be dismissed. In addition, Intel urges the Court to take judicial notice of documents that Intel argues support a finding that Jackson cannot plead compliance with § 287. Intel moves the Court to dismiss Jackson's claim with prejudice on this basis. Finally, in the event that the Court decides not to dismiss Jackson's claim with prejudice, Intel provides additional documentary support for its argument that Jackson cannot plead compliance with § 287, and asks the Court to treat its motion as a motion for summary judgment. For the reasons set forth below, the Court treats Intel's motion as one for summary judgment. In addition, the Court grants the motion. The Court therefore holds that Intel's request for judicial notice is moot.

1

## I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008). If the Court grants a motion to dismiss, it should freely give leave to amend the complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). However, the Court is not required to allow futile amendments. *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985). In other words, if the amended complaint would not survive a motion to dismiss, the Court does not abuse its discretion by dismissing with prejudice. *Id.* at 268.

As discussed above, Intel has submitted documents in support of its motion. It concedes that the Court may not take judicial notice of all of these documents. The Court may only treat the motion as a Rule 12(b)(6) motion to dismiss if it excludes materials outside the pleadings. Fed. R. Civ. P. 12(d). If, on the other hand, the Court takes these materials into account, it must treat the motion as one for summary judgment under Rule 56. *Id.*

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Compliance with the marking statute is a question of fact. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). Thus, a defendant moving for summary judgment on this issue bears the burden of showing that no reasonable jury could find that the patentee provided proper notice. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. V. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## II. Analysis

### A. Motion to Dismiss

#### 1. Pleading requirements

The first issue before the Court is whether this matter can be decided on a motion to dismiss. Jackson did not plead compliance with the marking statute in his complaint. Intel argues that he therefore failed to state claim for damages for patent infringement. The '900 Patent has expired already and Jackson is thus unable to request injunctive relief. Therefore, if Jackson cannot state a claim for damages, he has failed to state a claim.

Intel relies on *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996), for support of its argument that Jackson must plead compliance with § 287(a). Jackson is correct that the court's statement in *Maxwell* that the patentee "had the burden of pleading...that she complied with the [§ 287(a)] requirements" was dicta because the issue before the court was actually

3

whether the patentee had met its burden of proof. *Id.* However, this dicta is based on a longstanding interpretation of statutory marking requirements. The United States Supreme Court addressed the issue in *Dunlap v. Schofield*, 152 U.S. 244, 247-48, 14 S. Ct. 576, 38 L. Ed. 426 (1894), while interpreting a predecessor marking statute. The Court in *Dunlap* held that because patentees have an affirmative duty to comply with the marking statute, "the duty of alleging and the burden of proving [compliance] is upon the plaintiff." *Id.* at 248. While courts have declined to apply interpretations of predecessors to § 287(a) in some cases, *see, e.g., Amer. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1536 (Fed. Cir. 1993) (*"AMS"*), the Federal Circuit has relied on them when the relevant portion of the predecessor statute was not significantly different, *see, e.g., Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). In fact, in *Amsted* the court relied on the same passage from *Dunlap* referenced here, calling it "highly persuasive, if not controlling, on the meaning of the notice requirement of section 287." *Id.* Moreover, Jackson has not cited to any contrary precedent on this point.

For these reasons, the Court holds that Jackson's complaint should, at the least, be dismissed without prejudice. However, Intel has requested that the Court take more permanent action. Thus, the Court must address the question of dismissal with prejudice.

### 2. Dismissal with prejudice

In order to justify dismissal with prejudice, Intel must show that Jackson cannot plead compliance with the marking statute. *See Glick*, 766 F.2d at 268. The marking statute, 35 U.S.C § 287(a), limits a patentee's recovery to those damages incurred after notice to the infringer. This notice can be given in either of two ways: (1) the patentee can provide constructive notice to the public by marking the patented articles with the patent number; or (2) the patentee can provide actual notice of the infringement to the infringer. *Id.* Intel argues that Jackson failed to provide either type of notice.

4

In support of its argument that Jackson did not provide constructive notice, Intel attaches copies of agreements Jackson made that grant licenses for the '900 patent, but do not require the licensees to mark the licensed articles. Intel also avers that Jackson has attempted to claim that it gave Intel actual notice of infringement through a 1997 letter to Dialogic, Intel's predecessor. Intel argues that this letter was insufficient under § 287(a). However, while Intel asserts that the Court may take judicial notice of the license agreements it submits in support of its first argument, it makes no similar claim with regard to the 1997 letter. Thus, Intel essentially concedes that the Court must exclude the letter and any references to it in ruling on the motion to dismiss. Because Jackson can prove notice in either of two ways, and Intel has no way of showing that he cannot show actual notice, the Court need not decide whether it will take judicial notice of the remaining documents. Instead, the Court will treat the motion as a motion for summary judgment, pursuant to Rule 12(d). Intel's request for judicial notice is therefore moot.

## B. Motion for Summary Judgment

### 1. Actual Notice of Infringement

There is no dispute that in 1997, Jackson sent a letter regarding the '900 patent through his counsel to Dialogic, a company Intel acquired in 1999,[1] nor is there any dispute as to the contents of that letter. The majority of the five-page letter chronicles the litigation and subsequent settlement between Jackson and another company, Matsushita, over the '900 patent. The letter explains that Matsushita fought very hard to invalidate the patent, but was unsuccessful, and eventually agreed to pay Jackson for a non-exclusive license under the patent. The letter describes the categories of products covered by Matsushita's license, and notes that the claims of the patent cover a large number of such products, but also notes that Jackson and his

---

[1] The question of whether Intel could have been put on notice by a letter to a company it later purchased is not at issue at this point. Intel does not concede this point, but does not argue it in this motion because it argues that the letter failed to even provide notice to Dialogic.

counsel have "not yet analyzed any Dialogic products to determine whether or not they infringe." Finally, the letter recognizes Dialogic's "good reputation for respecting [intellectual property] rights," remarks that Jackson is willing to grant licenses for "less than he could expect as a result of litigating through a jury trial," and offers Dialogic a license. Attached to the letter was a copy of the '900 patent and the Reexamination Certificate resulting from the Matsushita litigation.

Intel argues that this letter failed to provide notice of infringement. Intel focuses on the fact that the letter specifically mentions that Jackson had not yet analyzed Dialogic's products to determine whether they infringed. Intel argues that § 287(a) requires more than what it regards as a general description of the patent and an offer to license to effect actual notice of infringement. Jackson counters that the letter described the types of products covered by the patent, detailed the claims impacted by the products, and offered a license within the context of litigation.

In the letter, Jackson did imply a concern about Dialogic's products and the likelihood that they were infringing. There is some support in the case law for Jackson's argument that this shoulds suffice. For instance, the Federal Circuit has held that a patentee does not necessarily have to threaten suit or demand cessation of infringement in order to give actual notice. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). Indeed, a patentee need not even make an unqualified charge of infringement. *Id.* In at least one case, the Federal Circuit relied on a strong "inference" in a letter in finding actual notice. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001).

However, the marking statute does require notice of infringement, not mere notice of the patent. *Amsted*, 24 F.3d at 187; *see also* 35 U.S.C. § 287(a). For this reason, although the statute does not require an unqualified charge of infringement, it does require a patentee to make a

specific charge. *Amsted*, 24 F.3d at 187. This specific charge must include: (1) the identity of the patent; (2) the activity that is believed to be an infringement; and (3) a proposal to abate the infringement, whether by license or otherwise. *SRI*, 127 F.3d at 1470.

Jackson's letter provided Dialogic with a copy of the patent and offered a license. The letter also gave a general description of what sort of activity might constitute an infringement, but specifically stated that Jackson had no opinion as to whether Dialogic was infringing. Moreover, while Jackson offered a license with some subtle implication that it was an alternative to litigation, he did not make explicit that he was providing an opportunity to abate infringement. Jackson's subtle statements therefore failed to provide the second and third elements of the specific charge of infringement he needed to make in order to effect notice.

This decision is supported by Federal Circuit precedent. For instance, in *Amsted*, the court found that the plaintiff had not provided actual notice in a letter that suggested that the recipient review the patent and refrain from supplying infringing products because the patentee planned on enforcing its rights. 24 F.3d at 186-87. In *Gart*, the court indicated in dicta that a letter which notified the recipient that it might find the patent "particularly interesting" relative to two specific products that the recipient manufactured did not provide sufficient notice. 254 F.3d at 1346-47.

Jackson's citations to case law are unavailing. For instance, Jackson points out that the court in *Gart* held that the patentee provided actual notice through an earlier letter that specifically referenced two claims from the patent and suggested that the recipient "may wish to have [its] patent counsel examine the...patent...to determine whether a non-exclusive license under the patent is needed." *Id.* at 1346. Jackson argues he also referenced a number of claims from the '900 patent in his letter and that his reference to litigation made his letter even more

7

suggestive of infringement. However, the letter in *Gart* referenced two claims from the patent with specific reference to two products produced by the recipient. *Id.* Jackson, on the other hand, simply described the types of products that were covered by the '900 patent. By referencing the specific products at issue and the claims potentially impacted by those products, the patentee in *Gart* made a specific, if somewhat veiled, charge that Jackson did not make.

Jackson cites to district court decisions in *Wokas v. Dresser Industries, Inc.*, 978 F. Supp. 839 (N.D. Ind. 1997), and *Lucent Technologies, Inc. v. Gateway Inc.*, 470 F. Supp. 2d 1180 (S.D. Cal. 2007) for support of the theory that mentioning a class or type of product covered by the product can suffice. The notice letter in *Wokas* noted that "vapor recovery hoses, nozzle spouts, and seals contained in" the patent in question were being or would soon be marketed. 978 F. Supp. at 844. The letter was worded awkwardly and in passive voice. *Id.* However, the court held that the "contained in" language could have been interpreted by a jury as making a specific charge of infringement. *Id.* In *Lucent*, the court indicated that indentifying a type of product can suffice only in certain circumstances. 470 F. Supp. 2d at 1185-86. The cases cited by the court in *Lucent* further support the conclusion in *Wokas* that referencing a class of products might be sufficient where a direct charge of infringement is made clear by other means. *Id.* (citing cases); *see also Novo Nordisk A/S v. Becton Dickinson & Co.*, 96 F. Supp. 2d 309, 319-20 (S.D.N.Y. 2000) (finding that reference to a class of products sufficed when notice was given in the form of a filed complaint for patent infringement).

Generally speaking, the actual notice requirement of § 287(a) can be satisfied in a number of ways, depending on the circumstances. Courts will not necessarily focus on whether a patentee threatened litigation, mentioned a specific product or claim, or offered a license. Instead, courts focus on whether a patentee makes a specific charge of infringement. Here, no

reasonable jury could find that Jackson's letter constituted actual notice, even making all reasonable inferences in his favor, as it was too general and too indirect. For this reason, the Court grants summary judgment in favor of Intel on the issue of whether Jackson provided actual notice.

### 2. Marking

As noted above, Intel also argues that by entering license agreements without provisions requiring the licensees to mark, Jackson failed to satisfy the constructive notice provision of § 287. Jackson does not dispute this failure. Instead, he submits later license agreements that he argues do require marking and claims that he was therefore in compliance with § 287 at least as early as the spring of 2002.

Jackson cites one case for support of his argument. He quotes *AMS*, 6 F.3d at 1537, for the proposition that a patentee can recover damages for the period after marking begins, even if the patentee failed to mark for some period of time beforehand. Jackson's block quote of *AMS*, however, conspicuously omits the last sentence of the paragraph, which states, "We caution, however, that once marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute." *Id.* Thus, the question is whether and when Jackson's license agreements provided for substantially consistent and continuous marking.

Jackson has a relatively high hurdle to clear in this regard. Intel has provided the Court with six licenses that do not require marking, each of which extends licensing rights through the expiration date of the patent. Thus, even if Jackson began to require licensing at some later point in time, there were still at least six licensees who were allowed to produce unmarked products at that point. In response, Jackson provides three license agreements from April and May 2002 that he claims require marking. In light of the fact that any additional license agreements and

9

information related to licenses should be in Jackson's possession, the Court finds that Jackson has not created a dispute as to this issue.[2] No reasonable jury could find that Jackson engaged in substantially consistent and continuous marking and thus cured his earlier failure to mark. Despite the fact that this motion comes at a relatively early stage in the proceedings, the Court sees no reason why allowing discovery would shed any more light on these matters.

## CONCLUSION

For the above reasons, the Court grants Defendant's motion for summary judgment.

IT IS SO ORDERED.

8/31/09
Dated

Hon. William J. Hibbler
United States District Court

---

[2] Though the Court found sufficient support for its decision in the portions of the record that are public, the Court did find additional support in sealed documents. Should Jackson desire an explanation of the Court's logic with regard to the sealed information, he may seek to have the seal lifted.